**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DASHAWN JAMISON,** | : | **Civil No. 1:13-CV-2129** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Judge Caldwell)** |
| | : | |
| **JOHN WETZEL, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This *pro se* civil rights action was initially brought by the plaintiff, a state prisoner, through the filing of a complaint naming some 45 correctional defendants on August 12, 2013.  (Doc. 1.)  Jamison's 38-page, 313 paragraph complaint was global in its reach, encompassing a host of supervisory prison officials and staff, and far reaching in its claims.   In this pleading Jamison alleged that prisoner officials had engaged in retaliatory disciplinary citations of him in 2011; had on several occasions given him meal bags which contained peanut products, despite Jamison's protests that he was allergic to peanuts; had interfered with his exercise of his religious rights; had transferred him in retaliation for his prior complaints; had sexually harassed him; and had housed him under unconstitutionally severe conditions of confinement within the Special Management Unit.  (Doc. 1.)  Despite the breadth and length of this pleading,

in many instances it is difficult to discern which correctional defendants are alleged to have infringed upon Jamison's rights.   These difficulties are particularly pronounced with respect to the senior supervisory defendants named in the complaint, many of whom are not directly linked by well-pleaded facts to any of the matters about which Jamison complains.

On October 28, 2013, the corrections defendants filed a motion to dismiss in this case.  (Doc. 14.)  This motion raised a series of legal claims and defenses.  Six weeks passed without any action on the plaintiff's part to litigate this dispositive motion.  In the face of this inaction, on December 6, 2013, we entered an order directing the plaintiff to "file a brief in response to the defendants' motion to dismiss by **Friday, December 20, 2013**.'  (Doc. 16.)  We also advised the plaintiff that: "Failure to file a brief in accordance with this order may result in the defendants' motion be deemed unopposed, and the motion may be ruled upon without further notice."  (Id.)  The plaintiff then sought additional time in which to respond to this motion, (Doc. 17.), a request which we granted on December 19, 2013, stating: "[T]he plaintiff's response to the outstanding motion shall be filed on or before **January 10, 2014**."  (Doc. 19.)

When this deadline passed without any action by the plaintiff to litigate this matter, we recommended dismissal of this action for failure to prosecute.  (Doc. 20.)

Following the filing of this Report and Recommendation, Jamison belatedly submitted a response in opposition to this motion to dismiss, and a request for extension of time in which to file this response. (Docs. 21 and 22.) The district court granted Jamison this request for extension of time, and on January 13, 2015, referred this case to the undersigned for further consideration. (Doc. 24.)

Having reviewed this motion, and response, for the reasons set forth below, it is recommended that the motion to dismiss be granted, in part, and denied, in part.

## II.    Discussion

### A.    Motion to Dismiss Standard of Review

The defendants have moved to dismiss this complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. Rule 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form

of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be

granted when ruling on a motion to dismiss.  In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662

(2009), the Supreme Court held that, when considering a motion to dismiss, a court

should "begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  <u>Id.</u> at 679.  According to the

Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice."  <u>Id.</u> at 678.  Rather, in conducting a

review of the adequacy of complaint, the Supreme Court has advised trial courts that

they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth.  While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain

more than mere legal labels and conclusions.  Rather, a complaint must recite factual

allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of

mere speculation.  As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter <u>Iqbal</u>, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis.  First, the
> factual and legal elements of a claim should be separated.  The District
> Court must accept all of the complaint's well-pleaded facts as true, but

may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a'plausible claim for relief.'  In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has also observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal.  The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955.  A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955).  This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.'  Id.  A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'  Iqbal, 129 S.Ct. at 1947.  Second, the court should identify

allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In this regard, one of the basic requisites for a civil complaint is that it must recites some essential facts tying the defendants to some alleged misconduct.  This fundamental requirement is driven both by matters of principle, and by pragmatic considerations.  As a matter of principle and practice, a basic factual recital is essential in a complaint because it is simply impossible without such averments to properly assign individual responsibility to a particular defendant without some factual description of what has transpired.  Therefore, it is incumbent upon a plaintiff to describe who he seeks to sue, and what these parties did that violated the plaintiff's

rights.  When a plaintiff fails in this basic responsibility, it is the duty of the court to dismiss his claims.  See, e.g., Moss v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) dismissing illegible complaint).  Further, in order to satisfy the strictures of Rule 8, a complaint must also contain a coherent prayer for relief, demanding relief from a defendant that lies within the power of the defendant to provide.  See Klein v. Pike Cnty. Comm'rs, CIV.A. 11-278, 2011 WL 6097734 (M.D. Pa. Dec. 6, 2011)(failure to articulate a prayer for relief compels dismissal); Snyder v. Snyder, 4:12-CV-105, 2012 WL 512003 (M.D. Pa. Jan. 24, 2012) report and recommendation adopted, 4:12-CV-105, 2012 WL 511993 (M.D. Pa. Feb. 15, 2012)(same).

In our view, these pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency.  Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the amended

complaint, and when examining whether a complaint properly invokes the jurisdiction of this Court.

### B. Many of the Plaintiff's Claims Fail as a Matter of Law As Currently Pleaded

#### 1. Many of the Plaintiff's Supervisory Liability Claims are Unavailing as Pleaded

At the outset, many of the 45 defendants named by Jamison in his pleading appear to be supervisory officials who are not alleged to have played any direct role in the matters which are the subject of this complaint. In particular, we find that the following sixteen defendants appear to be named in this action largely based upon their supervisory status within the prison system: Defendants Wetzel, Glunt, Close Kessling, Hollibaugh, Price, Sharp, Mill, Southers, Harry, Ditty, Meinzel, Henry, Zwierzyna, Horner, and Magee.

In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that prison supervisors may be exposed to liability only in certain, narrowly defined, circumstances. At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by

the Constitution.  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902 (3d Cir. 1997);

<u>see also</u> <u>Maine v.Thiboutot</u>, 448 U.S. 1 (1980).  Constitutional tort liability is personal

in nature and can only follow personal involvement in the alleged wrongful conduct

shown through specific allegations of personal direction or of actual knowledge and

acquiescence in the challenged practice.  <u>Robinson v. City of Pittsburgh</u>, 120 F.3d

1286 (3d Cir. 1997).

> In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have
> personal involvement in the alleged wrongdoing; liability cannot be
> predicated solely on the operation of *respondeat superior*.  Personal
> involvement can be shown through allegations of personal direction or
> of actual knowledge and acquiescence."  <u>Rode v. Dellarciprete</u>, 845 F.2d
> 1195, 1207 (3d Cir.1988).

<u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).

> As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional
> conduct of their subordinates under a theory of *respondeat superior*. . .
> .  See <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658,
> 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability
> for a municipal "person" under 42 U.S.C. § 1983); see also <u>Dunlop v.
> Munroe</u>, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's
> liability "will only result from his own neglect in not properly
> superintending the discharge" of his subordinates' duties); <u>Robertson v.
> Sichel</u>, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A
> public officer or agent is not responsible for the misfeasances or position
> wrongs, or for the nonfeasances, or negligences, or omissions of duty, of
> the subagents or servants or other persons properly employed by or under
> him, in the discharge of his official duties").  Because vicarious liability
> is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has violated the Constitution

Ashcroft v. Iqbal,  556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates.  O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them*.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006)(emphasis added).

Here, in some instances Jamison does little more than name a supervisory official in the caption of the case, and then seek to hold that official personally liable based upon the official's supervisory status without making specific factual allegations about these defendants in the body of this pleading.  To the extent that the plaintiff simply premises the liability of these defendants upon their supervisory status without setting forth any further factual basis for a claim in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison

supervisor and compels dismissal of these defendants.  Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

Furthermore, to the extent that these supervisory liability claims rest on the premise that officials did not after-the-fact act favorably upon his past grievances, this claim also fails.  An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances.  Inmates do not have a constitutional right to a prison grievance system.  Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.").  Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim.  See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).  See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a

constitutional concern."). As the United States Court of Appeals for the Third Circuit

observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of
> Corrections or Superintendents, were named only for their supervisory
> roles in the prison system. The District Court properly dismissed these
> defendants and any additional defendants who were sued based on their
> failure to take corrective action when grievances or investigations were
> referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d
> Cir.1988) (defendant in a civil rights action must have personal
> involvement in the alleged wrongs; liability cannot be predicated solely
> on the operation of *respondeat superior* ); see also Antonelli v. Sheahan,
> 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures
> do not give rise to a liberty interest protected by the Due Process Clause).

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third

Circuit has recently held that summary dismissal is appropriate "because there is no

apparent obligation for prison officials to investigate prison grievances. See Inmates

of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)." Paluch v.

Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).

In sum, a number of the plaintiff's claims against these supervisory defendants

appear to consist of little more than assertions of *respondeat superior* liability,

coupled with dissatisfaction with the processing of this inmate's past grievances,

assertions which as a matter of law do not suffice to state a constitutional tort claim.

Therefore, these defendants are entitled to be dismissed from this case.

**2.    Jamison Cannot Choose His Place of Confinement and Any Free-Standing Claim Relating to His Prison Transfer Fails**

Further, to the extent that Jamison endeavors in this lawsuit to bring any free-standing constitutional claims arising out of various prison transfers he has experienced it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification.  Moody v. Daggett, 429 U.S. 78, 88 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976). Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution."  Id.   Similarly, it has long been recognized that prison transfer decisions, standing alone, do not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution.  See, e.g., Hassain v. Johnson, 790 F.2d 1420 (9th Cir. 1986); Serrano v. Torres, 764 F.2d 47 (1st Cir. 1985).  In short, even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment; See, e.g., Gov't of Virgin Island v. Gereau, 592 F.2d 192 (3d Cir. 1979)(transfer from Virgin Islands to mainland); Rodriguez-Sandoval v. United States, 409 F.2d 529 (1st Cir. 1969)(transfer from Puerto Rico to Atlanta), and it is well-settled law establishes that prisoners have no inherent constitutional right to placement

in any particular prison, to any security classification, or to any particular housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215 225 (1976); Montanye, 427 U.S. at 242; Bulger v. U.S. Bureau of Prisons, 65 F.3d 48 (5th Cir. 1995); Marchesani v. McCune, 531 F.2d 459 (10th Cir.), cert.denied, 429 U.S. 846 (1976).

Simply put, Jamison may not choose his prison, and prison transfers typically will not give rise to a free-standing constitutional claim against prison officials. Therefore, Jamison may not assert that these transfer violated any substantive constitutional right guaranteed to the plaintiff.

### 3.    Jamison's Verbal, Sexual Harassment Claim Also Fails

Jamison also alleges that he was verbally and sexually harassed by defendant Domanick in May 2011. To the extent that Jamison is endeavoring to make a free standing constitutional claim of verbal harassment, this claim fails since it is well settled that "verbal harassment of a prisoner, although deplorable, does not violate the [constitution]. See McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir.2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir.2000); see also Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir.1997) (rejecting the Eighth Amendment claim of a prisoner who alleged that he "was verbally harassed, touched, and pressed against without his consent" because "[n]o single incident that he described was severe enough to be

'objectively, sufficiently serious.' ")." Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir.2006). See, e.g., Rister v. Lamas, 4:CV–10–1574, 2011 WL 2471486 (M.D.Pa. June 21, 2011); Patterson v. Bradford, CIV. 10–5043 NLH, 2011 WL 1983357 (D.N.J. May 20, 2011); Williams v. Bradford, CIV. 10–5120 JBS, 2011 WL 1871437 (D.N.J. May 13, 2011); Ringgold v. Lamby, 565 F.Supp.2d 549, 553 (D.Del.2008); Sharpe v. Costello, 1:06 CV 1493, 2007 WL 1098964 (M.D.Pa. Apr.11, 2007); Edwards v. Wetzel, 3:12-CV-1933, 2013 WL 3188569 (M.D. Pa. Mar. 25, 2013) report and recommendation adopted in part, 3:12-CV-1933, 2013 WL 3188723 (M.D. Pa. June 21, 2013).  Therefore, given that Jamison seems to simply allege that he was verbally harassed by staff on one occasion, and recognizing that it is "well settled that verbal harassment of a prisoner, although deplorable, does not violate the [constitution]," Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir.2006), this verbal harassment allegation, standing alone, fail to state a constitutional claim.

### 4.    Jamison's Claim for a Specific Sum in Unliquidated Damages Should Be Stricken

Further, we note one other, basic flaw in this pleading which should be corrected.  This Court should also strike the claim for a specific sum of unliquidated damages, exceeding $400,000, from this *pro se* complaint.  In this regard, Rule 12 (f) of the Federal Rules of Civil Procedure imposes a duty on the court to review pleadings and provides that the court may upon its own initiative at any time order

stricken from any pleading any immaterial matter.  Fed. R. Civ. P. 12(f).  Decisions

regarding whether claims may be stricken from a complaint are properly presented to

a United States Magistrate Judge for determination in the first instance.  Singh v.

Superintending School Committee of the City of Portland, 593 F. Supp. 1315 (D. Me.

1984).  In this case, Jamison's claim for a specified amount of unliquidated damages

violates Local Rule 8.1 which provides, in part, that:

> The demand for judgment required in any pleading in any civil action
> pursuant to Fed.R.Civ.P.8(a)(3) may set forth generally that the party
> claiming damages is entitled to monetary relief *but shall not claim any*
> *specific sum where unliquidated damages are involved.*  The short plain
> statement of jurisdiction, required by Fed.R.Civ.P.8(a)(1), shall set forth
> any amounts needed to invoke the jurisdiction of the court but no other.

Local Rule 8.1 (emphasis added).

Since this prayer for relief violates Local Rule 8.1 by specifying a particular

amount of unliquidated damages, that specific dollar claim should be stricken from the

complaint without prejudice to the plaintiff arguing in any subsequent trial or hearing

on the merits for any appropriate amount of damages supported by the evidence.

## 5.     Jamison Does Not Possess a Free-Standing Due Process Claim Relating to His Prison Discipline

Jamison has also complained about the conduct of certain disciplinary hearings

conducted in 2011.  According to Jamison, these disciplinary proceeding resulted in

some unidentified period of confinement in disciplinary custody.  To the extent that

Jamison endeavors advance a  due process claim based upon this disciplinary action,

that claim as pleaded by Jamison also fails as a matter of law.  In analyzing any

procedural due process claim, "the first step is to determine whether the nature of the

interest is one within the contemplation of the 'liberty or property' language of the

Fourteenth Amendment."  Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) (citing

Fuentes v. Shevin, 407 U.S. 67 (1972)).  Once we determine that a property or liberty

interest asserted is protected by the Due Process Clause, the question then becomes

what process is due to protect it.  Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481

(1972)).  Protected liberty or property interests generally arise either from the Due

Process Clause or from some specific state-created statutory entitlement.  See Board

of Regents v. Roth, 408 U.S. 564, 575 (1972).  However, in the case of prison inmates,

> [i]n Sandin v. Conner, the Supreme Court announced a new standard for
> determining whether prison conditions deprive a prisoner of a liberty
> interest that is protected by procedural due process guarantees.  Although
> the court acknowledged that liberty interests could arise from means
> other than the Due Process Clause itself, the court concluded that
> state-created liberty interests could arise only when a prison's action
> imposed an '*atypical and significant hardship on the inmate in relation
> to the ordinary incidents of prison life.*' . . .  In finding that the prisoner's
> thirty-day confinement in disciplinary custody did not present the type of
> atypical, significant deprivation in which a State might conceivably
> create a liberty interest, the court considered the following two factors:
> 1) the amount of time the prisoner was placed into disciplinary
> segregation; and 2) whether the conditions of his confinement in
> disciplinary segregation were significantly more restrictive than those
> imposed upon other inmates in solitary confinement.

Shoats, 213 F.3d at 143-44(citations omitted, emphasis added).

Applying these legal benchmarks, it has been held that disciplinary proceedings which result in sanctions of disciplinary segregation for six months or more do not impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life in similar situations, and therefore do not give rise to due process claims. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(7 months disciplinary confinement). See, e.g., Dunbar v. Barone, 12-1337, 2012 WL 2775024 (3d Cir. July 10, 2012)(held, inmate placed in disciplinary custody for 540 days (about eighteen months).

In this case Jamison's complaint does not allege facts which would allow for an inference that the conditions he faced in disciplinary custody amounted to an "atypical and significant hardship" under Sandin, and we have held that this type of confinement does not constitute an "atypical and significant hardship." Griffin v. Vaughn, 112 F.3d 703, 705–07 (3d Cir.1997) (ruling that fifteen months in segregation was not an atypical and significant hardship)); Arango v. Winstead, 352 F. App'x 664, 666 (3d Cir. 2009)(held, placement in administrative segregation for days or months at a time or transfers to more restrictive custody do not implicate a protected liberty interest, citing Torres, 292 F.3d at 150; Fraise v. Terhune, 283 F.3d 506, 522-23 (3d Cir.2002)); Henderson v. Kerns-Barr, 313 F. App'x 451, 452 (3d Cir. 2008)(90-day

disciplinary confinement did not implicate a liberty interest).  Therefore, to the extent that he attempts to advance a free-standing due process claim, Jamison has not articulated a sufficient liberty interest to trigger a valid due process interest in this prison setting, and any due process disciplinary claim fails as a matter of law.

### 6. Jamison's Prison Diet Claims Relating to Two Meals that Contained Peanut Products Fails to State a Claim Upon Which Relief May be Granted

Jamison also alleges that bag lunches provided to the plaintiff on two occasions, August 1 and 2, 2011, contained peanuts, a food item which triggered food allergies in the plaintiff.  On this basis of this spare assertion, Jamison sues seven defendants,[1] alleging that the defendants took insufficient steps to prevent peanut products from being placed in his meal on these two isolated occasions.

In our view this claim, which we construe as an Eighth Amendment conditions of confinement claim, also fails as matter of law.  "When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health.  Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)."  Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000).  In this setting, it is also clear that:  "The Eighth Amendment prohibits punishments inconsistent with "evolving standards of

---

[1]Defendants Glunt, Close, Kessling, Hollibaugh, Mill, Dogon and Price.

decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).   Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). See Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).

When courts have in the past considered specific conditions of confinement alleged by inmates under this Eighth Amendment standard, it is apparent that the food service  complaint advanced by Jamison cannot be found  to "deprive [this] inmate[] of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347(1981).  For example, courts have frequently rebuffed inmate complaints like those made here relating to the packaging and presentation of meals.  Thus, "while prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment, see Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir.1980), there is no constitutional right to hot meals.  See Brown-El v. Delo, 969 F.2d 644, 648 (8th Cir.1992) (finding frivolous prisoner's claim that his constitutional rights were violated when he was served cold food)." Laufgas v. Speziale, 263 F.App'x. 192, 198 (3d Cir. 2008). Similarly, the "purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation.  See Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir.1983) (only a substantial deprivation of food to a prisoner sets forth a viable

Eighth Amendment claim)." Lindsey v. O'Connor, 327 F.App'x. 319, 321 (3d Cir. 2009).  Furthermore, court have held that a brief interruption in water service to an inmate's cell does not, by itself, so deprive an inmate of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347(1981), that it constitutes an violation of the Eighth Amendment. Banks v. Mozingo, 423 F. App'x 123, 127-28 (3d Cir. 2011), citing Williams v.Delo, 49 F.3d 442, 444–47 (8th Cir.1995) (finding no Eighth Amendment violation where prisoner was placed in a strip cell without clothes, the water in the cell was turned off and the mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld).  Likewise an isolated instance in which an inmate encounters food items as to which he is allergic, standing alone, will not state a claim of deliberate indifference under the Eighth Amendment.  See Askew v. Paone, No. CIV.A. 3:10 2401, 2012 WL 1677278, at *9 (M.D. Pa. Jan. 11, 2012) report and recommendation adopted in part, No. 3:10-CV-2401, 2012 WL 1677255 (M.D. Pa. May 14, 2012).

Here, we find that Jamison has not alleged sufficient well-pleaded facts to state an Eighth Amendment claim regarding this food service.  Rather, he has simply identified two instances where he received foodstuffs, peanuts, that he should not eat

due to his allergies.  Such spare assertions, standing alone, do not rise to the level of a constitutional infraction.  Therefore, this claim should be dismissed.[2]

### C.    Assessment of Many of Jamison's Remaining Claims Requires Further Development of the Factual Record

Many of Jamison's remaining claims entail exacting burdens of proof but also call upon us to consider matters outside the pleadings, and, therefore, may not be disposed of at this stage of the litigation.  For example, Jamison has alleged retaliation claims against prison officials asserting that an August 2011 prison transfer and several disciplinary citations in 2011 constituted acts of retaliation against the plaintiff for exercising his First Amendment right to petition about prior grievances.

Jamison faces a demanding burden of proof in attempting to allege such a retaliation claim.  A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must first prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected

---

[2]Jamison levels other, broader condition of confinement claims in his complaint. While we are not in a position to address the substantive merits of those claims on this incomplete factual record, we note that in many instances Jamison has not alleged well-pleaded facts tying particular defendants to these conditions of confinement. Therefore, Jamison should be prepared to recite well-pleaded facts in support of all of these claims in any amended complaint, and should specifically allege how individual defendants participated in, directed or actively acquiesced in these actions.

conduct was a substantial motivating factor in the defendants' conduct.  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).  With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights."  Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

The third essential element to a retaliation claim is that there be a causal link between the exercise of a constitutional right and the adverse action taken against the prisoner.  Rauser, 241 F.3d at 333-34.  To establish this third, and crucial, component to a constitutional retaliation claim, causation, Jamison must make an exacting showing.  In this setting:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.  See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997).  In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Moreover, when examining these causation issues, we are specifically admonished that:

A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility of litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate.  Consequently, a putative plaintiff by engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take.  The point we make is not theoretical as we do not doubt that public actors are well aware that persons disappointed with official decisions and actions frequently bring litigation against the actors responsible for the decisions or actions in their individual capacities, and the actors surely would want to avoid such unpleasant events.  Thus, it would be natural for a public actor to attempt to head off a putative plaintiff with the unwarranted expenditure of public funds.  Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct.  In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Id. at 267-68.

Mindful of these concerns, courts have in the past carefully scrutinized inmate claims of retaliation premised solely on circumstantial proof of a temporal proximity between the plaintiff's conduct and allegedly retaliatory acts.  Indeed, this Court has spoken directly to the issue of what must be shown to state a valid complaint in this factual context, noting that:

To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the defendant to perform the retaliatory act.  Ambrose v. Twp. of Robinson,

303 F.3d 488, 493 (3d Cir.2002); <u>Meenan v. Harrison</u>, Civ. A. No. 3:03-CV-1300, 2006 WL 1000032, at *4 (M.D.Pa. Apr.13, 2006) (observing that a plaintiff must demonstrate that the exercise of First Amendment rights "played some substantial role" in the defendant's action). The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element. <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 512 (3d Cir.2003); <u>see also</u> <u>Kachmar v. Sungard Data Sys., Inc.</u>, 109 F.3d 173, 178 (3d Cir.1997) (stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn"). For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." <u>Marasco</u>, 318 F.3d at 512 (quoting <u>Krouse v. Am. Sterilizer Co.</u>, 126 F.3d 494, 503 (3d Cir.1997)) . . . [T]he Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, <u>see</u> <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 279 & n. 5 (3d Cir.2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of . . . wrongdoing, <u>Shellenberger v. Summit Bancorp, Inc.</u>, 318 F.3d 183, 189 (3d Cir.2003). This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.

<u>Conklin v. Warrington Tp.</u>, No. 06-2245, 2009 WL 1227950, *3 (M.D.Pa. April 30, 2009)

Applying this standard, courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks or months separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation. Thus, "[o]ur sister courts have held that a temporal proximity of as little as seventeen days was insufficient to establish causation. <u>See</u> <u>Killen v. N.W. Human Servs., Inc.</u>, No. 06-4100, 2007 WL 2684541,

at *8 (E.D.Pa. Sept.7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation); see also Farrell, 206 F.3d at 279 n. 6 (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); Smith v. ABF Freight Sys., Inc., No. 04-2231, 2007 WL 3231969, at *11 (M.D.Pa. Oct.29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); Mar v. City of McKeesport, No. 05-19, 2007 WL 2769718, at *4 (W.D.Pa. Sept.20, 2007) (holding that temporal proximity of three months was insufficient to establish causation)." Fischer v. Transue, 04-2756, 2008 WL 3981521, *10 (M.D.Pa. Aug. 22, 2008)(holding that temporal proximity of three weeks was insufficient to establish causation).

Furthermore, to the extent that the discipline imposed upon Jamison is a key component of this retaliation claim, in a prison discipline context, an inmate's retaliation claim fails whenever the defendant shows that there is "some evidence" to support the discipline citation.  As the United States Court of Appeals for the Third Circuit has observed:  "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F.App'x 241, 244  (3d Cir. 2010).

The defendants have sought dismissal of these retaliation claims on the pleadings.  Yet, while these claims are judged against exacting legal standards, resolution of prison retaliation claims in a disciplinary setting often entails an examination of matters outside the pleadings relating to the disciplinary hearings themselves.  Indeed, such consideration of matters outside the pleadings is often essential to a determination of whether "some evidence" supported the disciplinary citation, a determination that is the keystone to analysis of constitutional claims in this setting.  For this reason in many instances courts have resolved these questions as a matter of law on summary judgment motions, where the court may consider undisputed material facts beyond the pleadings themselves.  See Nifas v. Beard, 374 F.App'x 241, 244  (3d Cir. 2010).

Likewise, we conclude that the defendants' statute of limitations defense, which is asserted in this motion to dismiss, cannot be resolved on the face of the pleadings themselves.  In this regard, it is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 266-67 (1985).  In Pennsylvania, the statute of limitations for a personal injury action is two years.  42 Pa.C.S. § 5524.  A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action.  Sameric Corp. of Delaware,

Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v.

County of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing

wrong theory, a plaintiff must make an exacting showing to avail himself of this

grounds for tolling the statute of limitations.  For example, it is well settled that the

"continuing conduct of [a] defendant will not stop the ticking of the limitations clock

[once] plaintiff obtained requisite information [to state a cause of action].   On

discovering an injury and its cause, a claimant must choose to sue or forego that

remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting

Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)).  See also

Lake v. Arnold,  232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

> The continuing violations doctrine is an "equitable exception to the
> timely filing requirement."  West v. Philadelphia Elec. Co., 45 F.3d 744,
> 754 (3d Cir.1995).  Thus, "when a defendant's conduct is part of a
> continuing practice, an action is timely so long as the last act evidencing
> the continuing practice falls within the limitations period; in such an
> instance, the court will grant relief for the earlier related  acts that would
> otherwise be time barred."  Brenner v. Local 514, United Bhd. of
> Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991).In
> order to benefit from the doctrine, a plaintiff must establish that the
> defendant's conduct is "more than the occurrence of isolated or sporadic
> acts."  West, 45 F.3d at 755 (quotation omitted).  Regarding this inquiry,
> we have recognized that courts should consider at least three factors:  (1)
> subject matter-whether the violations constitute the same type of
> discrimination, tending to connect them in a continuing violation; (2)
> frequency-whether the acts are recurring or more in the nature of isolated
> incidents; and (3) degree of permanence-whether the act had a degree of

permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.  See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)).  The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001).

Further, given the requirements of the Prison Litigation Reform Act, (PLRA), which imposes an administrative exhaustion requirement upon prisoner-plaintiffs, it has been held that equitable tolling of any statute of limitations is appropriate while an inmate exhausts his administrative remedies.  This conclusion has been consistently reached by those appellate courts which have addressed this question in precedential opinions.  See e.g., Messa v. Goord, 652 F.3d 305, 310 (2d Cir. 2011); Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000).  This view has also often been espoused by the United States Court of Appeals for the Third Circuit, albeit in non-precedential opinions, where the court of appeals has held that: "[b]ecause exhaustion of prison administrative remedies is mandatory under the Prison Litigation Reform Act, the statute of limitations applicable to § 1983 actions may be tolled while a prisoner exhausts." Thompson v. Pitkins, 514 F. Appx. 88, 90 (3d Cir. 2013); Paluch v. Sec'y Pa. Dep't of Corr., 442 Fed. Appx. 690, 694 (3d Cir.

2011)(same).  See e.g., Ballard v. Williams, 3:10-CV-1456, 2010 WL 7809047 (M.D.

Pa. Dec. 9, 2010) report and recommendation adopted, 3:10-CV-1456, 2011 WL

5089726 (M.D. Pa. Oct. 25, 2011); Ozoroski v. Maue, No. Civ. A. No. 08-0082, 2009

WL 414272, at *7 (M.D. Pa. Feb. 18, 2009); Carter v. Pa. Dep't of Corrections, Civ.

A. No. 08-0279, 2008 WL 5250433, at *11 (E.D. Pa. Dec. 17, 2008) ("[T]he statute

of limitations begins to run only when [a] plaintiff has exhausted his administrative

remedies under the PLRA."); Cooper v. Beard, Civ. A. No. 06-0171, 2006 WL

3208783, at *8 (E.D. Pa. Nov. 2, 2006) ("Because an inmate would be placed in a

situation where his suit would either be barred from federal court for failure to exhaust

administrative remedies under the PLRA, or time-barred because he had pursued those

administrative remedies . . . the statute of limitations for an inmate's § 1983 claims are

tolled while he exhausts his administrative remedies.").

In this case, the defendants aptly note that many of the specific actions about

which Jamison complains occurred between May and August 2011, more than two

years prior to the filing of this complaint on August 12, 2013.  (Doc. 1.)  Jamison

acknowledges this immutable truth but argues that he had pending and on-going

grievance proceedings which extended beyond August 12, 2011, and thus tolled the

limitations period.  Aside from Jamison's assertion that he is entitled to equitable

tolling of this limitations period, however, we have no factual information before us

which would permit an informed assessment of these statute of limitations claims.  In these circumstances, where the factual record relating to tolling of the statute of limitations is not fully developed, we are not in a position to make fully-informed judgments regarding the extent to which this defense may be available to the defendants.   Therefore, the motion to dismiss this case on statute of limitations grounds should be denied without prejudice to renewal of this claim on a more fully developed record.

### D.   The Complaint Should Be Dismissed Without Prejudice

While this complaint is flawed in a number of respects, we recognize that *pro se* plaintiffs should be afforded an opportunity to amend a complaint before the complaint is dismissed with prejudice, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  In this case, the plaintiff has not alleged facts that would state a claim upon which relief may be granted with respect to many claims. Nonetheless, out of an abundance of caution, and in order to preserve the plaintiff's rights, it is recommended that this matter be dismissed without prejudice to the plaintiff attempting to amend this federal complaint to state a claim upon which relief may be granted in federal court, by including proper allegations against appropriate

party-defendants that meet the requirements of federal law, provided that the plaintiff acts promptly.

## III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' Motion to Dismiss (Doc. 14.), be GRANTED, in part, and DENIED in part, as follows:

1.   The supervisory liability claims against defendants Wetzel, Glunt, Close Kessling, Hollibaugh, Price, Sharp, Mill, Southers, Harry, Ditty, Meinzel, Henry, Zwierzyna, Horner, and Magee should be DISMISSED WITHOUT PREJUDICE.

2.   To the extent that Jamison endeavors to bring any free-standing constitutional claims arising out of various prison transfers he has experienced those claims should be DISMISSED WITHOUT PREJUDICE since it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification.

3.   To the extent that Jamison is endeavoring to make a free standing claim of verbal harassment, this claim should be DISMISSED WITHOUT

PREJUDICE since it is well settled that verbal harassment of a prisoner, although deplorable, does not violate the constitution.

4.     Jamison's Claim for a Specific Sum in Unliquidated Damages Should Be Stricken.

5.     To the extent that Jamison endeavors advance a  due process claim based upon this disciplinary action this claim should be DISMISSED WITHOUT PREJUDICE.

6.     Jamison has not alleged sufficient well-pleaded facts to state an Eighth Amendment claim against defendants Glunt, Close, Kessling, Hollibaugh, Mill, Dogon and Price relating to two isolated instances where he received foodstuffs, peanuts, that he should not eat due to his allergies, and this claim should be DISMISSED WITHOUT PREJUDICE.

These claims in the plaintiff's complaint should be dismissed without prejudice to the plaintiff attempting to amend this federal complaint  to state a claim upon which relief may be granted in federal court, by including proper allegations against appropriate party-defendants that meet the requirements of federal law, provided the plaintiff acts within 20 days of any dismissal order.  In all other respects the motion

to dismiss should be denied without prejudice to renewal of these defenses on a fully

developed factual record.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 30th day of January, 2014.

**_S/Martin C.  Carlson_**
Martin C. Carlson
United States Magistrate Judge