IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DASHAWN JAMISON,                      :        Civil No. 1:13-CV-2129
                                      :
            Plaintiff,                :
                                      :
      v.                              :        (Judge Caldwell)
                                      :
JOHN WETZEL, et al.,                  :        (Magistrate Judge Carlson)
                                      :
            Defendants.               :

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

In its current form this case presents a singular set of circumstances.  This is the second time that the plaintiff, a state inmate, has ignored a defense motion to dismiss filed in this action.  The last time Jamison ignored such a motion we recommended dismissal of this action.  Now that Jamison has followed this course on a second time, his inaction inspires a second recommendation of dismissal of these claims on our part.

This *pro se* civil rights action was initially brought by the plaintiff, a state prisoner, through the filing of a complaint naming some 45 correctional defendants on August 12, 2013.  (Doc. 1.)  As a *pro se* litigant the plaintiff was advised by this court at this outset of this lawsuit of his responsibilities in this litigation.  Thus, on August 12, 2013, the district court entered its Standing Practice Order in this case, an order

which informed the plaintiff of his responsibility to reply to defense motions, and warned him in clear and precise terms of the consequences which would flow from a failure to comply with briefing schedules on motions, stating:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion.  The motion may, therefore, be granted if:  (1) the court finds it meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

(Doc. 2, p.2.)

On October 28, 2013, the corrections defendants filed their first motion to dismiss in this case.  (Doc. 14.)  This motion raised a series of straightforward legal claims, including an argument that a number of the plaintiff's claims were untimely and were barred by the two-year statute of limitations which applied to federal civil rights claims.  (Id.)  Six weeks passed without any action on the plaintiff's part to litigate this dispositive motion.

In the face of this inaction, on December 6, 2013, we entered an order directing the plaintiff to "file a brief in response to the defendants' motion to dismiss by **Friday, December 20, 2013**.' (Doc. 16.)  We also advised the plaintiff that:  "Failure to file a brief in accordance with this order may result in the defendants' motion be deemed unopposed, and the motion may be ruled upon without further notice." (Id.)  The plaintiff then sought additional time in which to respond to this motion, (Doc. 17.), a

request which we granted on December 19, 2013, stating: "[T]he plaintiff's response to the outstanding motion shall be filed on or before **January 10, 2014**." (Doc. 19.)

This deadline then passed without any action by the plaintiff to litigate this matter.  In the face of this continuing, and on-going, inaction we deemed the motion ripe for resolution, and recommended that the complaint be dismissed.  (Doc. 20.)  Only after we filed this Report and Recommendation did Jamison deign to respond to the defense motion.  (Doc. 21.)  This case was then remanded to us for further consideration of Jamison's belated response to this motion.  (Docs. 23 and 24.)

Upon consideration of this response, we recommended that a number of claims and parties be dismissed from this action but that the plaintiff be given an opportunity to amend his complaint, (Doc. 25.), a recommendation which the district court adopted.  (Doc. 27.)

Jamison then filed an amended complaint on April 9, 2015.  (Doc. 31.)  This amended complaint actually expanded and broadened the allegations set forth in Jamison's original, flawed complaint, named some 47 defendants in a 47-page, 259 paragraph pleading, which seemed to stitch together factually unrelated claims of retaliation and discrimination that occurred at separate times at two different institutions and allegedly involved disparate actors.  (Id.)  The defendants promptly

moved to dismiss this amended complaint on April 23, 2015, alleging that claims in the complaint were both time-barred and misjoined.  (Docs. 32 and 33.)

Presented with the second motion to dismiss in this case, Jamison has reprised the course of action he adopted when presented with the defendant's initial motion to dismiss in 2013:  He has ignored the motion and has failed to respond to this motion within the time frame prescribed by the rules of this court, and the Standing Practice Order filed in this case.

Since Jamison has chosen not to respond to this dispositive motion, and the time for responding has passed, we will deem the motion to dismiss to be ripe for resolution.  For the reasons set forth below, it is recommended that the motion to dismiss be granted.

## II.  <u>Discussion</u>

### A.  <u>Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted</u>

At the outset, under the Local Rules of this court the plaintiff should be deemed to concur in this motion to dismiss, since the plaintiff has failed to timely oppose the motion, or otherwise litigate this case.  This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the rules of this court warrants dismissal of the action, since  Local Rule 7.6 of the Rules

of this court imposes an affirmative duty on the plaintiff to respond to motions and

provides that

> Any party opposing any motion, other than a motion for summary
> judgment, shall file a brief in opposition within fourteen (14) days after
> service of the movant's brief, or, if a brief in support of the motion is not
> required under these rules, within seven (7) days after service of the
> motion. *Any party who fails to comply with this rule shall be deemed not
> to oppose such motion*. Nothing in this rule shall be construed to limit
> the authority of the court to grant any motion before expiration of the
> prescribed period for filing a brief in opposition. A brief in opposition
> to a motion for summary judgment and LR 56.1 responsive statement,
> together with any transcripts, affidavits or other relevant documentation,
> shall be filed within twenty-one (21) days after service of the movant's
> brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to

dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with

the [R]ule after a specific direction to comply from the court.' Stackhouse v.

Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc.,

No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case the

plaintiff has not complied with the Local Rules, or this court's orders, by filing a

timely response to this motion. Therefore, these procedural defaults by the plaintiff

compel the court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal
> Rules are meant to be applied in such a way as to promote justice. *See*
> Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve
> cases on their merits whenever possible. However, justice also requires

that the merits of a particular dispute be placed before the court in a timely fashion ...." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." <u>Id.</u> Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to the motion to dismiss. These failures now compel us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose this motion to dismiss.

**B.    <u>Dismissal of this Case Is Also Warranted Under Rule 41</u>**

Beyond the requirements imposed by the Local Rules of this court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for

failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a district court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)) Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether

a District Court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus, 538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g. Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action.  At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders, and has otherwise neglected to litigate this case, or respond to defense motions.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action.  Indeed, this

factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight

and careful consideration.  As the United States Court of Appeals for the Third Circuit

has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in
> support of a dismissal or default judgment."  Adams v. Trustees of N.J.
> Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d
> Cir.1994) (internal quotation marks and citation omitted).  Generally,
> prejudice includes "the irretrievable loss of evidence, the inevitable
> dimming of witnesses' memories, or the excessive and possibly
> irremediable burdens or costs imposed on the opposing party." Id. at 874
> (internal quotation marks and citations omitted). . . . However, prejudice
> is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware
> v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell
> & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d
> Cir.1988). It also includes "the burden imposed by impeding a party's
> ability to prepare effectively a full and complete trial strategy." Ware,
> 322 F.3d at 222.

Briscoe  v. Klaus, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court

orders now wholly frustrates and delays the resolution of this action.  In such

instances, the defendants are plainly prejudiced by the plaintiff's continuing inaction

and dismissal of the case clearly rests in the discretion of the trial judge.  Tillio v.

Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings

compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007)

(failure to comply with discovery compels dismissal); Azubuko v. Bell National

Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  In this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.'  Adams, 29 F.3d at 874."  Briscoe v. Klaus, 538 F.3d at 260-61 (some citations omitted).  Here, the plaintiff has for a second time ignored and failed to respond to a defense motion to dismiss.  The plaintiff has also failed to timely file pleadings, and has not complied with the Standign Practice Order of the court.   Thus, the plaintiff's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders."  Adams, 29 F.3d at 874.

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case.  In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence.  Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863,

875 (3d Cir.1994).  At this juncture, when the plaintiff has failed to comply with instructions of the court directing the plaintiff to take specific actions in this case, and has violated the Local Rules, the court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative.  <u>See, e.g.</u>, <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion.  In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail.  The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant.  Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the court.

Finally, under <u>Poulis</u> we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims.  In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant.  The plaintiff cannot refuse to address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him.  Furthermore, it is well-settled that " 'no single <u>Poulis</u> factor is dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373." <u>Briscoe v. Klaus</u>,  538 F.3d at 263.  Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, a number of the plaintiff's claims fail on their merits, yet another factor which favors dismissal of this action.  The legal flaws inherent in these claims are discussed separately below.

### C.   A Number of the Plaintiff's Claims Fail as a Matter of Law

### 1.   A Number of these Claims Are Time-Barred

As we previously noted, this case presents an unusual circumstance.  The plaintiff has filed a complaint, which the defendants contend is untimely and falls beyond the statute of limitations in many respects.  Having been accused in this

motion to dismiss of filing an untimely complaint, the plaintiff now neglects to timely respond to this motion to dismiss.

It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations. For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)). See also Lake v. Arnold, 232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991). In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001).

In this case, the plaintiff complains about an array of matters, including disciplinary sanctions imposed upon him more than two years prior to the filing of this complaint. In particular the allegations set forth in paragraphs 31-43 of this amended complaint all involve matters which appear to be time-barred. In every one of these instances, Jamison immediately attached a high degree of significance and permanence

to the events set forth in this complaint.  Thus, Jamison recites well-pleaded facts in his complaint which clearly reveal that, to the extent these events entailed violations of the plaintiff's constitutional rights, those violations were known and recognized by the plaintiff when they first occurred, many years ago.  Thus, these events plainly had the degree of significance and permanence which should have triggered the plaintiff's awareness of his duty to assert his rights.  Therefore, in this case a straightforward application of the two-year statute of limitations also compels dismissal of this action as untimely.

Jamison cannot save these time-barred claims by resort to the continuing violation theory since that tolling doctrine "will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action].  On discovering an injury and its cause, a claimant must choose to sue or forego that remedy."  Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998).  Indeed, with respect to the controlling consideration relating to this equitable tolling doctrine, "the degree of permanence [of the injury, i.e.]-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his rights," Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001), it is apparent that Jamison subjectively identified the gravity and permanence of these events when they occurred, oftentimes more than two years prior to the filing of this lawsuit.  On

these facts, Jamison simply cannot evade the bar of the statute of limitations on some continuing wrongs theory, since many of these alleged wrongs were fully known by the plaintiff more than two years ago.  Therefore, on the face of the complaint, the claims set forth in paragraphs 31-43 of the amended complaint are time-barred.

2.      **The Plaintiff's Supervisory Liability Claims are Unavailing**

Furthermore, many of the 47 defendants named by Jamison in his pleading appear to be supervisory officials who are not alleged to have played any direct role in the matters which are the subject of this complaint.  In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that prison supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred.  Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution.  Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only follow personal

involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice.

Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates.  O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them*.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006)(emphasis added).

Here, in a number of instances, Jamison seems to sue supervisory defendants primarily because he feels that they did not respond adequately to his past grievances. to the extent that these supervisory liability claims rest on the premise that officials did not after-the-fact act favorably upon his past grievances, this claim also fails.  An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances.  Inmates do not have a constitutional right to a prison grievance system. Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman,

259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The district court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third Circuit has recently held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances. See Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).

In sum, to the extent that the plaintiff's claims against these supervisory defendants appear to consist of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with the processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim. Furthermore, Jamison may not maintain these supervisory liability claims by simply alleging in a talismanic fashion that these supervisors "conspired" to engage in a "scam," as he endeavors to do in this amended complaint. (Doc. 31, ¶¶199-210.) Therefore, the supervisory liability claims set forth in the amended complaint at paragraphs 199-210 should also be dismissed.

### 3.   The Claims Set Forth in This Amended Complaint Are Misjoined

Finally, we note that an examination of these remaining claims also reveals that they involve allegations of distinct acts committed by disparate parties at widely

different times and places.  In particular, the complaint contains one set of allegations leveled against officials at SCI Houtzdale, and a separate and entirely distinct set of claims brought against defendants at SCI Camp Hill.  These claims involve different acts, and distinct times, allegedly committed by different and disparate actors.  Thus, there is no single, coherent legal, logical, topical or temporal connection between these various claims.  Without some further articulation of a unifying theme or thread between these claims, the joinder of these plainly divergent claims in a single lawsuit is inappropriate under Rule 20 of the Federal Rules of Civil Procedure, the rule governing joinder of defendants in federal litigation, which provides, in part, that:

> Person[s] ... may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.
>
> Fed. R.Civ. P., Rule  20(a)(2).

In this case, it cannot be said from the amended complaint that these remaining allegations arise out of the same transaction, occurrence or series of transactions or occurrences.  Quite the contrary, these episodes appear to be separate transactions, allegedly committed by different actors at divergent times and places.  "[G]iven the

hodgepodge of claims raised in the ... complaint," <u>Boretsky v. Governor of New</u>

<u>Jersey</u>, 433 F. App'x 73, 77 (3d Cir. 2011), this court may properly, in the exercise of

its discretion, dismiss this amended complaint, and require Jamison to file separate

complaints relating to what seem to be factually distinct claims. <u>Id</u>. In order to add

clarity to these claims we recommend that the court exercise its discretion by

following this course, and dismissing the remaining, and apparently misjoined, claims

in Jamison's amended complaint without prejudice to Jamison filing separate

complaints relating to what seem to be factually distinct claims. <u>See Johnson v.</u>

<u>Chambers</u>, No. 1:11 CV 831, 2012 WL 398335, at *16 (M.D. Pa. Jan. 20, 2012)

<u>report and recommendation adopted</u>, No. 1:11-CV-831, 2012 WL 398309 (M.D. Pa.

Feb. 7, 2012) <u>aff'd</u>, 487 F. App'x 693 (3d Cir. 2012).

Thus, a merits analysis reveals that many of the claims advanced in this case are

subject to dismissal. Therefore, we find that all of the <u>Poulis</u> factors call for dismissal

of this case.

### III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

defendants' motion to dismiss (Doc. 32.), be GRANTED and the plaintiff's amended

complaint be dismissed for failure to respond to this motion to dismiss. In addition,

it is recommended that the following claims be dismissed on their merits:

1.    The claims set forth at paragraphs 33-41 of the amended complaint; and

2.    The supervisory liability claims set forth at paragraphs 199-210 of the amended complaint.

It is further recommended that the claims relating to one set of allegations leveled against officials at SCI Houtzdale, and a separate and entirely distinct set of claims brought against defendants at SCI Camp Hill, and involve different acts, and distinct times, allegedly committed by different and disparate actors, which are not connected by any single, coherent legal, logical, topical or temporal nexus be dismissed as misjoined.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own

determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of June, 2015.

_**S/Martin C.  Carlson**_
Martin C. Carlson
United States Magistrate Judge